## McCormick Estates

*Butler, Beatty, Greer & Johnson,* for petitioner.
*William Taylor, Jr.,* for respondent.

VAN RODEN, P. J., February 25, 1952.—Decedent's widow, as administratrix of his estate, has presented a petition for declaratory judgment, requesting the court to determine property rights in the proceeds of the sale of publication rights with respect to a letter written by decedent to his minor daughters. It is the contention of the administratrix that such proceeds are properly payable to the estate. Respondent, who is the guardian of the estates of the minor children, has filed an answer denying that the estate has any interest in the subject matter of the controversy and contending that such property rights are vested exclusively in decedent's minor daughters as recipients of the letter.

The admitted facts are as follows: Decedent, while on active military duty in Korea, sent to his wife a

letter which was addressed to "Dear Joannie & Rose Marie" (referring to his daughter, Joan, who is three years of age, and his wife's daughter, Rose Marie, who is six years of age). It is obvious that decedent intended the letter to be read to them by their mother, for it opens as follows:

"This is Daddy, I want you to listen and pay attention while Mommie reads this to you. Just try and make believe I was there talking to you." The rest of the letter contains tender expressions of affection and parental advice. Shortly after the letter was sent, decedent was killed in action. Thereafter, the letter came to the attention of the public press and achieved renown as the "Dear Little Girls Letter". To date, a motion picture company and a music publishing company have contracted for the rights to use the letter in their respective fields. These contracts have been approved by the court, and the proceeds are being held subject to the decision of the court respecting distribution.

Thus, the matter presently before the court for determination is whether the rights to the proceeds from the publication of the letter belong to the writer of the letter (and hence to his estate), or whether they belong to the recipient or addressee of the letter.

The general rule of law appears to be well established, and is stated in 51 L. R. A. 360 (1901):

"There is a dual right of property in all letters: A qualified one in the writer to publish when and as he chooses, or withhold from publication altogether and to prevent publication without his consent; and the recipient's right of physical possession, use, and enjoyment, and transfer, without power to publish except by consent of the author or for self vindication or justification. All the cases are in accord on these propositions."

Perhaps the leading American case on the right of property in letters is Baker v. Libbie, 210 Mass. 599, 97 N. E. 109, 37 L. R. A. (N. S.) 944 (1912), which held that an executor may enjoin the publication of private letters of his testator although they are upon commonplace subjects and have no literary merit. The Supreme Court of Massachusetts emphasized the distinction that the property rights in the words of a private letter is in the writer and not in the receiver, whereas the property rights in the material on which the letter is written is in the receiver.

The general rule is recognized by counsel for respondent, who nevertheless contends that there are certain well-recognized exceptions, i. e., where the author intends to dedicate his letter to the public or to some private person, or where the writer authorizes others to read the letter, or where the letter is written by a public official to the government or by a prominent citizen to a public body.

The first exception is recognized in the case of Folsom v. Marsh, 2 Story 100, Fed. Cas. No. 4,901 (1841), where Mr. Justice Story held that an author of any letter, whether literary, formal or business correspondence, possesses the sole and exclusive copyright therein "unless, indeed, there be a most unequivocal dedication of private letters and papers by the author, either to the public or to some private person."

There is no intrinsic evidence in the letter presently before the court which would indicate any intention on the part of decedent to dedicate the letter either to the children or to the public. It is very clear that decedent did not entertain any thought that the letter possessed any special artistic or literary merit or that it would arouse any public interest. The whole appeal of the letter lies in its simplicity and its natural tone. The fact that it was written while decedent was facing imminent death on the battlefield may help explain

the popular appeal of the letter but it does not indicate any consciousness or realization on the part of decedent that the letter would ever be publicly disclosed. Accordingly, there is no indication of any act or expression on the part of decedent which would support even an inference of intention to dedicate.

With respect to the second exception, counsel for respondent cites the case of Widdemer v. Hubbard et al., 19 Phila. 263 (1887), where it was stated that when a writer of a letter authorizes it to be read by others than the person to whom it is addressed, he cannot restrain the publication on the ground of its being a private communication. The instant letters reads, in part: "This is Daddy, I want you to listen and pay attention while Mommie reads this to you." In view of the tender age of the children, the letter had to be read to them by some other person, and the most natural choice would be their mother. But it cannot be held that this in itself indicates an intention on the part of the decedent to relinquish any property rights which he might have had in the contents of the letter. As heretofore stated, it seems obvious that decedent was not conscious of any special artistic, literary or commercial value in the letter. It follows, therefore, that he could not have intended to relinquish rights of which he was not even aware.

With respect to the third exception, counsel for respondent cites the case of Mayor, etc., of New York v. Lent, 51 Barbour 19 (1868), which held that with respect to a letter written by George Washington to "The Honorable, the Mayor, Recorder, Aldermen and Commonalty of the City of New York", it could be inferred from the style, address and responsive character of the letter that it was intended it become the property of the corporation to which it was sent. In the present situation, the value of the letter does not

depend upon the prominence of the author, but rather the author has been rescued from obscurity by virtue of the unexpected popular appeal of the letter. Although decedent was in the service of his government as a member of the armed forces, he did not thereby acquire the status of a public official. Nor does his posthumous fame as the author of the letter in question confer upon him any prominence nunc pro tunc so as to characterize him as a prominent citizen at the time he wrote the letter. In any event the letter was clearly intended for the private edification of his daughters and was not addressed directly or indirectly either to the government or any public body or even to the reading public.

The court concludes, therefore, that there are no facts in the instant case which would take it out of the general rule that the receiver of the letter has merely the right to the material on which it is written, while the author or his representatives have the right of publication of the ideas expressed in the letter. In our opinion, law coincides with justice in this case, for it is apparent from the letter in question that decedent's wife shared his affection with the little girls and must be presumed to have been an object of decedent's concern together with them. The court has no reason to believe that decedent intended his worldly goods to devolve unto his children to the exclusion of their mother. By recognizing decedent's property rights in the contents of the letter, the widow will be entitled to share in the distribution of the proceeds, together with the children.

On the other hand, if the paper on which the letter was written should acquire value as a collector's item, the proceeds from the sale of the physical letter would belong exclusively to the children.

Accordingly, the court enters the following

*Decree*

And now, to wit, February 25, 1952, the above matter having come on to be heard on petition and answer, and written briefs and oral argument having been submitted to the court, and after full and careful consideration of the matter, it is ordered, adjudged and decreed as follows:

1. The property rights in the physical document herein involved, to wit, the letter written by decedent to Joan McCormick and Rose Marie McCormick, minors, is hereby declared to be in the minors and it is further declared that the minors have full rights to the physical possession, use and enjoyment thereof, with exclusive rights to sell the physical document, and the proceeds of any such sale shall enure to the benefit of the minors, in equal shares.

2. The property rights in the contents of the letter are hereby declared to be in decedent and the personal representative of his estate, and it is hereby declared that Mary Rose McCormick, administratrix of the estate of John J. McCormick, deceased, is exclusively entitled to the right of publication or nonpublication of the contents of the letter, and that the proceeds from the sale of any such rights of publication shall be paid over to the administratrix for the use, benefit and enjoyment of such persons as may be entitled to share in decedent's estate.

The First National Bank of Media, guardian of the estates of the minors, is hereby directed to pay over and deliver to administratrix any and all funds which it may heretofore have received or shall hereafter receive from contracts involving any sale of rights to publish the contents of the letter in any manner or form.

4. All such funds, when received by the administratrix, shall be held, accounted for and distributed by her in accordance with the provisions of law.

5. The costs of these proceedings shall be paid by the administratrix out of the funds coming into her hands by virtue of this decree.